FRISHKORN REAL ESTATE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14270.   Promulgated February 15, 1929.

*R. H. Ritterbush, Esq.,* for the respondent.

OPINION.

Van Fossan : At the time of its organization the petitioner received in exchange for its capital stock certain assets, including commissions receivable amounting to $78,829.17. During the years 1917, 1918, and 1919 the petitioner collected a considerable portion of the commissions so acquired. During 1920 petitioner collected, and the respondent included in the petitioner's income, the sum of $9,237.88, representing all but $202.53 of the entire remaining balance of commissions receivable acquired by the petitioner on organization, January 1, 1917. It is clear that the commissions receivable turned in to petitioner for stock constituted capital assets. The subsequent collection of the same, if not in excess of the value at the date of acquisition, was merely a conversion of capital assets to a different, form and did not give rise to income.

The item of $900 covering the cost of surveying and " staking " Frishkorn Highlands' Subdivision is a capital expenditure. *Lincoln L. McCandless*, 5 B. T. A. 1114; *Hannibal Missouri Land Co.*, 9 B. T. A. 1072. The petitioner's custom of treating such a charge as an expense does not establish its character as such. The cost of the properties should be increased by the amount of this item.

The petitioner arbitrarily set up an account of $75,000 as a " reserve for improvements " applicable to the Frishkorn Highlands Subdivision. This amount was presumed to cover the cost of platting the land, grading and cindering streets, installing sidewalks and making other desirable and necessary improvements preparatory to and coincident with the sale of lots to the general public. On January 1, 1928, the total amount expended for such purpose was approximately $21,600 and at this time only three lots were left unsold. The respondent reduced the amount from $75,000 to $15,000 as of the years 1920 and 1921, which action gave rise to the sole question

raised as to this item. While it appears that petitioner's estimate of $75,000 was entirely too liberal, it further appears that during the period involved petitioner actually spent the sum of $21,658.56 in such anticipated improvements. This sum should be allowed.

The petitioner seeks to have its 1919 net operating loss increased by $12,441.68 by the addition of an allowance for traveling and entertaining expenses of its officers, amounting to $5,000 in each of the years 1918 and 1919 and by the amounts of $354.13 and $2,087.55, representing losses sustained during 1918 and 1919, respectively, by reason of the cancellation of certain land contracts acquired by the petitioner at its organization. The petitioner authorized its officers to expend an aggregate of $10,000 during each of the years 1918 and 1919 as traveling expenses and cost of entertaining prospective purchasers. The petitioner has presented no evidence that its officers expended more than the $5,000 per year allowed by the respondent; neither has it shown that such expenses were ordinary or necessary in its business. Therefore, we find no error in the determination of the respondent. *Alexander Krauss*, 5 B. T. A. 799; *Hess Brothers*, 7 B. T. A. 729. The land contracts were acquired by the petitioner at their face value in exchange for stock and constituted capital assets on January 1, 1917. Upon the subsequent cancellation of the contracts presumably the lots were repossessed. If equal in value to the unpaid balance of the contracts no loss was suffered. We do not know their value. We do know they were resold in many cases at a profit. The evidence is insufficient to enable us to determine that there was a loss.

During the summer of 1921 petitioner promoted the Park View, St. Clair Subdivision and sold 71 lots therein to various purchasers for $48,255, of which $8,210.94 was paid in cash. In November, 1921, the petitioner sold to R. H. Dunning for $40,000, with $4,789.06 in cash, its entire holdings in the subdivision, including the contracts of purchase relating to the 71 lots. So far as petitioner was concerned the $40,000 represents the total sale price of its interest in the entire property. The rights arising from the prior contracts were supplanted by the Dunning contract. When December 31 arrived petitioner had in its hands $13,000. It was no longer interested in either the property or the contracts. The entire transaction was closed. The respondent correctly refused to allow petitioner to report this income on the installment basis.

As to the last item, the commissions accrued in the brokerage department, the evidence is so inadequate and confused as to make it impossible to determine the precise situation obtaining. In this event, we have no alternative but to hold that petitioner has not demonstrated that respondent erred.

*Judgment will be entered under Rule 50.*